No. 2014-1397

United States Court of Appeals
*for the*
Federal Circuit

HOSPIRA, INC. and ORION CORPORATION,

*Plaintiffs-Appellees,*

v.

SANDOZ, INC. and SANDOZ CANADA, INC.,

*Defendants-Appellees,*

v.

CARACO PHARMACEUTICAL LABORATORIES, LTD.,

*Appellant,*

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF
NEW JERSEY IN CASE NO. 09-CV-4591, JUDGE MARY L. COOPER

**BRIEF FOR APPELLANT
CARACO PHARMACEUTICAL LABORATORIES, LTD.**

Matthew J. Becker
Jason T. Murata
AXINN, VELTROP &
HARKRIDER LLP
90 State House Square
Hartford, Connecticut 06103
(860) 275-8100

*Attorneys for Appellant Caraco
Pharmaceutical Laboratories, Ltd.*

June 2, 2014

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for Appellant Caraco Pharmaceutical Laboratories, Ltd. certifies the following:

1. The full name of every party or amicus represented by me is:

   Caraco Pharmaceutical Laboratories, Ltd.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Caraco Pharmaceutical Laboratories, Ltd.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Sun Pharmaceutical Industries Ltd.; Nogad Holdings; Sun Pharma Global, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Axinn, Veltrop & Harkrider LLP:  Matthew J. Becker, Jason T. Murata, Matthew S. Murphy, David K. Ludwig
   Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C.:  Gregory D. Miller

   June 2, 2014                                    /s/ Matthew J. Becker
   Date                                            Signature of counsel

                                                   Matthew J. Becker
                                                   Printed name of counsel

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ..................................................1

JURISDICTIONAL STATEMENT .....................................................2

STATEMENT OF THE ISSUES..........................................................3

STATEMENT OF THE CASE.............................................................3

STATEMENT OF THE FACTS ...........................................................4

    I.      THE NEW JERSEY ACTION.............................................4

    II.     THE MICHIGAN ACTION..................................................5

    III.    HOSPIRA AND SANDOZ'S JOINT MOTION TO VACATE AND CARACO'S MOTION TO INTERVENE..........................5

SUMMARY OF THE ARGUMENT ....................................................7

ARGUMENT .....................................................................................10

    I.      Legal Standards ..................................................................10

         A.    Applicable Law ........................................................10

         B.    Permissive Intervention ...........................................10

         C.    Standard of Review..................................................11

    II.     THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING CARACO'S MOTION TO INTERVENE AS UNTIMELY. ......................................................................13

         A.    The District Court Failed to Consider the Limited Purpose of Caraco's Motion to Intervene. ...................................................14

         B.    The District Court Failed to Consider that Caraco Acted Promptly When Sandoz Disclosed Its Intent to Vacate the Invalidity Decision.................................................16

         C.    The District Court Failed to Consider that Caraco Would Not Have Been Permitted to Intervene Earlier. ...............................18

i

1. Sandoz adequately represented Caraco's interests until shortly before Caraco moved to intervene ......................18

2. Earlier intervention would have complicated and delayed the proceedings. ............................................19

D. If Upheld, the District Court's Decision Would Lead to Inefficiency and Unpredictability. ...........................20

1. The district court's decision promotes inefficiency. ......20

2. The district court's decision will create Unpredictability. ......................................................22

III. THE COURT ABUSED ITS DISCRETION IN FINDING THAT INTERVENTION WOULD PREJUDICE HOSPIRA AND SANDOZ. ..........................................................23

A. Caraco Sought to Intervene Solely to Oppose Vacatur, Not to Interfere with Hospira's and Sandoz's Settlement. .................23

B. Hospira and Sandoz Have No Absolute Right to Vacatur, and Therefore They Would Not Be Prejudiced by the District Court Denying Their Joint Motion to Vacate. ....................................25

C. Caraco's Intervention Would Not Have Unduly Delayed the Proceedings. ..............................................26

IV. THE COURT ERRED IN FINDING THAT DENYING THE MOTION TO INTERVENE WOULD NOT PREJUDICE CARACO………... ..........................................................27

V. THE DENIAL OF INTERVENTION WAS NOT HARMLESS ERROR. ..........................................................27

CONCLUSION ..........................................................30

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Acra Turf Club, LLC v. Zanzuccki,
    No. 13-1634, 2014 WL 1273667 (3d Cir. Mar. 31, 2014) .................................19

Appelton v. C.I.R.,
    430 Fed. App'x. 135 (3d Cir. 2011) ...........................................................12, 26

AstraZeneca AB v. Dr. Reddy's Labs., Ltd.,
    No. 05-5553, 2010 WL 4387519 (D.N.J. Oct. 29, 2010)............................19, 20

Cardinal Chem. Co. v. Morton Int'l. Inc.,
    508 U.S. 83 (1993)...............................................................................................29

In re Cendant Corp. Sec. Litig.,
    109 F. Supp. 2d 273 (D.N.J. 2000)....................................................................10

Choike v. Slippery Rock Univ.,
    297 F.App'x 138 (3d Cir. 2008) .........................................................................18

Crumble v. Blumthal,
    549 F.2d 462 (7th Cir. 1977) ..............................................................................13

Devore v. City of Philadelphia,
    No. 00-3598, 2003 WL 21961975 (E.D. Pa. June 24, 2003) ..............................28

Ericsson, Inc. v. Interdigital Commc'ns Corp.,
    418 F.3d 1217 (Fed. Cir. 2005) ..........................................................................15

Griggs v. Provident Consumer Disc. Co.,
    459 U.S. 56 (1982)...............................................................................................17

Haworth, Inc. v. Steelcase, Inc.,
    12 F.3d 1090 (1993).............................................................................................10

iii

Hill v. Western Elec. Co.,
   672 F.2d 381 (4th Cir.1982) ...............................................................12

Hospira Inc. et al. v. Actavis LLC et al.,
   No. 14-488 (D. Del. filed Apr. 18, 2014) ............................................1

Hospira Inc. et al. v. Akorn, Inc.,
   No. 14-2811 (N.D. Ill. filed Apr. 18, 2014) ........................................1

Hospira Inc. et al. v. Aurobindo Pharma Ltd. et al.,
   No. 14-486 (D. Del. filed Apr. 18, 2014) ............................................1

Hospira Inc. et al. v. Ben Venue Laboratories Inc.,
   No. 14-487 (D. Del. filed Apr. 18, 2014) ............................................1

Hospira, Inc. et al. v. Caraco Pharmaceutical Labs., Ltd.,
   No. 10-14514 (E.D. Mich. filed Nov. 12, 2010) ...............................1, 5

Hospira, Inc. et al. v. Intas Pharmaceuticals Ltd. et al.,
   No. 14-336 (M.D.N.C. filed Apr. 18, 2014) .........................................2

Hospira, Inc. v. Sandoz, Inc.,
   No. 09-4591 (D.N.J. filed Sept. 4, 2009) .............................................1

Hospira, Inc. v. Sandoz, Inc.,
   Nos. 12-1426, -1427 (Fed. Cir. filed May 30, 2012) ...........................1

In re Acushnet River & New Bedford Harbor Proceedings re Alleged
   PCB Pollution,
   712 F. Supp. 1019 (D. Mass. 1989) ....................................................21

Liberte Capital Group, LLC v. Capwill,
   126 Fed. App'x. 214 (6th Cir. 2005) ............................................12, 27

In re Lipitor Antitrust Litig.,
   No. 12-2389, 2013 WL 4495912 (D.N.J. Aug. 20, 2013) ...................16

Martinez-McBean v. Gov't of the Virgin Islands,
   562 F.2d 908 (3d Cir. 1977) ................................................................28

Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,
72 F.3d 361 (3d Cir. 1995) ......................................................11, 13, 16

Nat'l Collegiate Athletic Ass'n v. Corbett,
296 F.R.D. 342 (M.D. Pa. 2013) .........................................................16

Nat'l Wildlife Fed'n v. Gorsuch,
744 F.2d 963 (3d Cir. 1984) ...............................................11, 16, 20

Natural Res. Def. Council v. Costle,
561 F.2d 904 (D.C. Cir. 1977).................................................11, 14

Natural Res. Def. Council v. Texaco Ref. & Mktg., Inc.,
906 F.2d 934 (3d Cir. 1990) ..............................................................12

Ohio Willow Wood Co. v. Thermo-Ply, Inc.,
629 F.3d 1374 (Fed. Cir. 2011) .........................................................29

Ohio Willow Wood Co. v. Thermo-Ply, Inc.,
No. 07-274, D.I. 141 (E.D. Tex. Feb. 3, 2011)............................18, 23

Pansy v. Borough of Stroudsburg,
23 F.3d 772 (3d Cir. 1994) ..........................................................12, 13

Philadelphia Elec. Co. v. Westinghouse Elec. Corp.,
308 F.2d 856 (3d Cir. 1962) ..............................................................11

Robert Bosch LLC v. Pylon Mfg. Corp.,
659 F.3d 1142 (Fed. Cir. 2011) ...................................................12, 13

Romasanta v. United Airlines, Inc.,
537 F.2d 915 (7th Cir. 1976) .............................................................12

Sec. & Exch. Comm'n v. Investors Sec. Corp.,
560 F.2d 561 (3d Cir. 1977) ..............................................................17

U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,
513 U.S. 18 (1994).........................................................................28, 29

v

United Airlines, Inc. v. McDonald,
432 U.S. 385 (1977)...........................................................................12, 16, 20, 21

United States v. Alcan Aluminum, Inc.,
25 F.3d 1174 (3d Cir. 1994) ........................................................................2, 11

United States v. City of Detroit,
712 F.3d 925 (6th Cir. 2013) ......................................................................12, 14

**Statutes**

28 U.S.C. § 1295(a)(l)................................................................................................2

28 U.S.C. § 1338(a). .................................................................................................2

**Other Authorities**

Fed. Circ. R. 28(a)(5) ...............................................................................................2

Fed. R. App. P. 28(a)(4)...........................................................................................2

Fed. R. Civ. P. 24 .....................................................................................................2

Fed. R. Civ. P. 24(b) .............................................................................................3, 13

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................................10

Fed. R. Civ. P. 24(b)(3)..........................................................................................10

Fed. R. Civ. P. 62.1 ..................................................................................................6

## STATEMENT OF RELATED CASES

(1)    Hospira, Inc. and Orion Corporation (collectively "Hospira") and Sandoz Inc. and Sandoz Canada, Inc. (collectively, "Sandoz") previously brought an appeal before this Court, Hospira, Inc. v. Sandoz, Inc., Nos. 12-1426, -1427 (Fed. Cir. filed May 30, 2012), which is currently pending ("Sandoz Appeal"). The Sandoz Appeal, like this appeal, relates to decisions issued in Hospira, Inc. v. Sandoz, Inc., No. 09-4591, (D.N.J. filed Sept. 4, 2009).  The Sandoz Appeal was based on a decision issued by the New Jersey court on May 4, 2012 (the "Invalidity Decision"), which held U.S. Patent No. 6,716,867 ("the '867 patent") invalid.  This appeal is based on another decision issued by the New Jersey court.

(2)    Hospira asserted the '867 patent against Caraco Pharmaceutical Laboratories, Ltd. ("Caraco") in Hospira, Inc. et al. v. Caraco Pharmaceutical Labs., Ltd., No. 10-14514 (E.D. Mich. filed Nov. 12, 2010) (the "Michigan Action").

(3)    Hospira has also asserted the '867 patent in five other actions: Hospira Inc. et al. v. Aurobindo Pharma Ltd. et al., No. 14-486 (D. Del. filed Apr. 18, 2014); Hospira Inc. et al. v. Ben Venue Laboratories Inc., No. 14-487 (D. Del. filed Apr. 18, 2014); Hospira Inc. et al. v. Actavis LLC et al., No. 14-488 (D. Del. filed Apr. 18, 2014); Hospira Inc. et al. v. Akorn, Inc., No. 14-2811 (N.D. Ill. filed

1

Apr. 18, 2014); Hospira, Inc. et al. v. Intas Pharmaceuticals Ltd. et al., No. 14-336

(M.D.N.C. filed Apr. 18, 2014).

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Federal

Circuit Rule 28(a)(5), Caraco and the undersigned counsel state:

(A) The action giving rise to this appeal was a patent infringement case, and the

district court had subject matter jurisdiction under 28 U.S.C. § 1338(a).

(B) This Court has exclusive jurisdiction over this appeal under 28 U.S.C.

§ 1295(a)(l).

(C) Non-Party Caraco Pharmaceutical Laboratories, Ltd.'s Motion to Intervene

Pursuant to Rule 24 of the Federal Rules of Civil Procedure or

Alternatively to Participate as Amicus Curiae to Oppose Joint Motion to

Vacate (D.I. 404, 405) (the "Motion to Intervene") was denied on

February 27, 2014. (A3-4.) Caraco filed its timely Notice of Appeal to this

Court on March 27, 2014. (A1550-52.)

(D) Caraco appeals from the denial of its Motion to Intervene, which is a final,

appealable order. United States v. Alcan Aluminum, Inc., 25 F.3d 1174,

1179 (3d Cir. 1994).

2

## STATEMENT OF THE ISSUES

Did the district court err by denying Caraco's Motion to Intervene under Fed. R. Civ. P. 24(b)?

If the district court erred by denying Caraco's Motion to Intervene, did the district court err in subsequently granting the parties' Joint Motion to Vacate?

## STATEMENT OF THE CASE

On September 4, 2009, Hospira brought a patent action against Sandoz in the United States District Court for the District of New Jersey for, *inter alia*, infringement of the '867 patent. (A96-98.) The district court held the '867 patent invalid as obvious. (A459-492; A502-03 (collectively, the "Invalidity Decision").) Hospira appealed the Invalidity Decision to this Court on May 30, 2012 (A507-08), and Sandoz proceeded to defend the Invalidity Decision on appeal.

During the pendency of the appeal, Hospira and Sandoz settled the case conditioned upon the district court vacating the Invalidity Decision. (A1362; A6-8.) On December 23, 2013, this Court remanded jurisdiction to the district court for consideration of a motion to vacate the Invalidity Decision.[1] (A1280-81.) Hospira and Sandoz filed their Joint Motion to Vacate the same day. (A1236-37.)

---

[1] Hospira's and Sandoz's Joint Motion to Vacate Amended Order and Judgment with Respect to U.S. Patent No. 6,716,867, referred to herein as the "Joint Motion to Vacate"

The next day, Caraco moved to intervene for the sole purpose of opposing the Joint Motion to Vacate, attaching a brief opposing the Joint Motion to Vacate[2] as an exhibit to its Motion to Intervene. (A1284; A1298-1317.) The district court denied Caraco's Motion to Intervene and granted the Joint Motion to Vacate without addressing Caraco's opposition arguments. (A3-15.) On March 27, 2014, Caraco filed its Notice of Appeal to this Court. (A1550-51.)

## STATEMENT OF THE FACTS

### I.   THE NEW JERSEY ACTION

On September 4, 2009, Hospira brought a patent action against Sandoz for infringement of the '867 patent. (A96-98.) From October 16, 2009 to December 6, 2013, Sandoz sought to invalidate the '867 patent. On May 4, 2012, the district court held the '867 patent invalid. (A459-492; A502-03.) Hospira cross-appealed the district court's Invalidity Decision, (A507-08), and Sandoz filed an opposition brief (A86-87, D.I. 42). While the case was pending appeal, Hospira and Sandoz obtained extensions of time totaling 215 days and agreed to stay the appeal for an additional 130 days. (A85-87, D.I. 18-19, 32, 35, 40, 50, 53, 58.)

---

[2] Intervenor Caraco Pharmaceutical Laboratories, Ltd.'s Brief in Opposition to Joint Motion to Vacate Amended Order and Judgment with Respect to U.S. Patent No. 6,716,867 (D.I. 404, 405), referred to herein as Caraco's "Opposition"

## II.  THE MICHIGAN ACTION

Fourteen months after Hospira sued Sandoz, Hospira sued Caraco in the

Michigan Action for infringement of the same '867 patent.  (A314; A318-20.)

Like Sandoz up until December 6, 2013, Caraco sought to invalidate the

'867 patent.  (A363; A378; A380-81.)  When the district court issued its Invalidity

Decision, Caraco and Hospira had not completed discovery or claim construction.

On May 30, 2012, Hospira and Caraco agreed to stay the Michigan Action until the

earlier of May 22, 2013 or the resolution of Hospira's appeal to conserve the

resources of the parties and Court in view of the Invalidity Decision and Hospira's

appeal.  (A76, D.I. 59.)  Caraco intended to move for summary judgment in the

event the Invalidity Decision was affirmed on appeal.  At Hospira's urging, the

Michigan court extended the stay for an additional two months.  (Id., D.I. 60.)

When Hospira and Sandoz repeatedly delayed the progress of the appeal, Caraco

moved for summary judgment on November 26, 2013, arguing that Hospira was

collaterally estopped from asserting the '867 patent based on the district court's

Invalidity Decision.  (A663-65.)

## III.  HOSPIRA'S AND SANDOZ'S JOINT MOTION TO
## VACATE AND CARACO'S MOTION TO INTERVENE

On December 4, 2013, shortly after Caraco moved for summary judgment,

Hospira and Sandoz settled, conditioned on the district court vacating the

5

Invalidity Decision.  (A1362; A6-8.)  On December 6, 2013, Hospira and Sandoz

jointly requested that this Court stay its proceedings to permit the district court to

issue an indicative ruling pursuant to Fed. R. Civ. P. 62.1 that, upon remand, it

would grant a motion to vacate the Invalidity Decision.  (A1361-63.)  On

December 16, 2013, the district court issued an indicative ruling stating that it

would vacate the judgment.  (A1128-29.)  On December 23, 2013, this Court

remanded jurisdiction to the district court for consideration of the Joint Motion to

Vacate.  (A1280-81.)

The day after the district court obtained jurisdiction to rule on the Joint

Motion to Vacate and just eighteen days after becoming aware that Sandoz had

changed positions by seeking to vacate the very Invalidity Decision that Sandoz

had previously obtained, Caraco moved to intervene for the sole purpose of

opposing the Joint Motion to Vacate.  (A1284, A1298-99.)  Caraco attached its

Opposition brief to its Motion to Intervene as an exhibit.  (A1299-1300.)  On

February 27, 2014, the district court denied Caraco's Motion to Intervene and

vacated the Invalidity Decision.  (A3-15.)  Hospira subsequently asserted the

'867 patent in five new actions.  See supra Statement of Related Cases.

# SUMMARY OF THE ARGUMENT

In denying Caraco's Motion to Intervene, the district court abused its discretion in evaluating both the "timeliness" and "prejudice" factors of the permissive intervention standard. The district court misapplied the "timeliness" factor by ignoring relevant law and key facts, which are errors that constitute abuses of discretion. By disregarding the wealth of case law that measures timeliness from the point at which an existing party no longer adequately represents the intervening party's interests, and consequently, failing to measure the timeliness of Caraco's motion from the point when Sandoz no longer represented Caraco's interests, the district court based its timeliness analysis on an error of law. It failed to consider that Caraco moved to intervene as soon as Sandoz switched positions and sought to resurrect (through vacatur) the validity of the very patent it had previously invalidated.

The district court also abused its discretion by failing to consider the limited purpose for which Caraco sought to intervene and consequently misapplying the law to the facts in its timeliness analysis. It specifically failed to consider that Caraco sought only to be heard on a pending motion that Hospira and Sandoz had just filed and had not yet been decided, and that Caraco did not seek to *disturb* a judgment, reopen the proceedings, raise new issues, seek discovery or have the

7

district court reconsider the underlying merits of the case.  Given the purpose for

which Caraco sought intervention, its Motion to Intervene could not reasonably be

considered untimely.

The district court abused its discretion by committing a clear legal error of

judgment in concluding that Caraco's intervention would prejudice Hospira and

Sandoz.  The district court incorrectly concluded that its potential denial of the

Joint Motion to Vacate (as a result of considering Caraco's Opposition to that

motion) constituted undue prejudice.  Such a denial, based on a correct analysis of

the facts and law, could not constitute cognizable prejudice to Hospira and Sandoz.

In this regard, the district court incorrectly assumed that Hospira and Sandoz were

*entitled* to vacatur, and that any opposition to this supposed entitlement was

prejudicial.  The district court also unreasonably concluded that Caraco's

intervention would "squelch settlement,"  by ignoring the facts that Caraco sought

only to be heard on the legal issue of vacatur, and that Hospira and Sandoz chose

to condition their settlement on the outcome of their motion to vacate.  In fact, the

Court's consideration of the potential denial of vacatur in its prejudice analysis was

improper in the first place.  The denial of vacatur would of course not have

resulted from Caraco's intervention *per se*, but rather could only have resulted

8

from the Court's analysis of and decision on the vacatur issue. Other Courts have recognized that this type of downstream result does not constitute prejudice.

If not reversed, the district court's decision denying Caraco's Motion to Intervene will create hopeless inefficiency by effectively requiring early intervention in patent litigation even when the existing litigants adequately represent the interests of the prospective intervenor. The district court's decision would further create uncertainty given that its "timeliness" analysis conflicts with other decisions in the Third Circuit.

The district court's denial of Caraco's Motion to Intervene was not harmless error, because Caraco's proposed Opposition to the Joint Motion to Vacate presented controlling authority and argument that the district court failed to consider in its vacatur decision. This authority requires that exceptional circumstances be present in order to vacate a judgment. By failing to require the parties to show exceptional circumstances, the district court's decision paves the way for litigants to "privately" erase public invalidity decisions by contract, promote repetitive litigation of invalid patents and, in the case of pharmaceutical patent litigation, reduce the availability of cost-effective medications.

9

# **ARGUMENT**

## I.     LEGAL STANDARDS

### A.     Applicable Law

"When reviewing a procedural matter not unique to patent law, the Federal Circuit follows the law of the appropriate regional circuit.  This appeal involves a procedural matter not unique to patent law, namely the denial of a motion to intervene."  Haworth, Inc. v. Steelcase, Inc., 12 F.3d 1090, 1092 (Fed. Cir. 1993).  This case is appealed from the United States District Court for the District of New Jersey, and accordingly Third Circuit law applies.  Id.

### B.     Permissive Intervention

"On timely motion, the court may permit anyone to intervene who:  . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Permissive intervention is available if three requirements are met:  (1) the application for intervention is timely; (2) the main action has a question of fact or law in common with the movant's claim or defense; and (3) there is an independent ground for federal jurisdiction.  In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 273, 276 (D.N.J. 2000).  The court also shall "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

The timeliness of a motion to intervene is "determined from all the circumstances . . . ." Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995) (internal quotation omitted).  Courts should consider the stage of the proceeding, the prejudice that the delay may cause the parties and the reason for the delay.  Id.  "[T]he court should also look to . . . the purpose for which intervention is sought."  Natural Res. Def. Council v. Costle, 561 F.2d 904, 907 (D.C. Cir. 1977).  "The mere passage of time, however, does not render an application untimely."  Mountain Top Condominium Ass'n, 72 F.3d at 369.  Timeliness "should be measured from the point at which the applicant knew, or should have known, of the risk to its rights."  Alcan Aluminum, 25 F.3d at 1183.  "A person should not be permitted to intervene if a party to the suit is adequately representing the interest of the prospective intervenor.  As a correlative, in considering timeliness the beginning point should be the stage when inadequate representation becomes apparent."  Nat'l Wildlife Fed'n v. Gorsuch, 744 F.2d 963, 970-71 (3d Cir. 1984) (citation omitted).

C.    Standard of Review

A denial of leave to permissively intervene is reviewed for abuse of discretion.  Philadelphia Elec. Co. v. Westinghouse Elec. Corp., 308 F.2d 856, 859 (3d Cir. 1962).  A district court abuses its discretion when its decision "rests upon

a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." <u>Natural Res. Def. Council v. Texaco Ref. & Mktg., Inc.</u>, 906 F.2d 934, 937 (3d Cir. 1990); <u>see also</u> <u>United States v. City of Detroit</u>, 712 F.3d 925, 930 (6th Cir. 2013) (applying similar standard to denial of intervention). Furthermore, this Court has found an abuse of discretion when a district court acts "based upon an error of law or clearly erroneous factual findings" or commits "a clear error of judgment." <u>Robert Bosch LLC v. Pylon Mfg. Corp.</u>, 659 F.3d 1142, 1147-48, 1150-51 (Fed. Cir. 2011) (improper weight given to certain facts in district court's analysis).

Circuit courts have found an abuse of discretion in the denial of permissive intervention where the district court applied the wrong legal standard or improperly applied the correct standard to the facts of the case. <u>See, e.g.</u>, <u>Appelton v. C.I.R.</u>, 430 Fed. App'x. 135, 139 (3d Cir. 2011) (no consideration of delay or prejudice); <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 777-80 (3d Cir. 1994) (incorrectly applied timeliness and common question requirements); <u>Romasanta v. United Airlines, Inc.</u>, 537 F.2d 915, 917-19 (7th Cir. 1976) <u>aff'd sub nom.</u> <u>United Airlines, Inc. v. McDonald</u>, 432 U.S. 385 (1977) (reversing denial of permissive intervention on timeliness grounds); <u>Liberte Capital Group, LLC v. Capwill</u>, 126 Fed. App'x. 214, 221 (6th Cir. 2005) (failure to sufficiently evaluate factors); <u>Hill</u>

12

v. Western Elec. Co., 672 F.2d 381, 386-87 (4th Cir.1982) (improperly applied timeliness or prejudice standards); Crumble v. Blumthal, 549 F.2d 462, 468-69 (7th Cir. 1977) (no prejudice).

A denial of permissive intervention is reviewable on appeal, and is not rendered unreviewable merely because the district court articulates the correct standard. See Pansy, 23 F.3d at 777-80. To the contrary, the district court's incorrect application of the permissive intervention standard constitutes an abuse of discretion and is reversible on appeal. See id. Accordingly, a district court abuses its discretion, warranting reversal, where it fails to consider all of the relevant circumstances, see Mountain Top Condominium Ass'n, 72 F.3d at 369, or fails to give appropriate weight to the relevant facts, see Robert Bosch LLC, 659 F.3d at 1150-51.

## II.     THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING CARACO'S MOTION TO INTERVENE AS UNTIMELY.

Caraco fully satisfied the requirements to permissively intervene to oppose vacatur of the Invalidity Decision. See Fed. R. Civ. P. 24(b). The district court acknowledged that there was both a common question of fact or law and an independent ground for federal jurisdiction. (A10.) The district court abused its discretion, however, in finding that Caraco's Motion to Intervene was "not timely, as [Caraco] should have sought to intervene earlier." (Id.) The district court failed

13

to consider the limited purpose for which Caraco sought to intervene, used an

incorrect legal standard for measuring timeliness and failed to consider Sandoz's

sudden abandonment of its interest in invalidating the '867 patent (which left

Caraco's interests unrepresented for the first time).

A.    The District Court Failed to Consider the
      Limited Purpose of Caraco's Motion to Intervene.

The district court abused its discretion by failing to consider the limited

purpose of Caraco's Motion to Intervene. "In relying upon the age of the case and

its closeness to settlement, the Court failed to take into account 'the purpose for

which intervention (was) sought,' namely, [to participate in an upcoming phase of

the litigation]." Costle, 561 F.2d at 907-08 (D.C. Cir. 1977). The district court

specifically failed to consider that Caraco's intervention did not seek to reopen any

completed proceeding and would not require discovery or result in relitigation of

the merits. Rather, Caraco sought only to oppose the Joint Motion to Vacate—a

motion that had just been filed and that the district court had not yet decided, and

had a return date of nearly a month after Caraco filed its Motion to Intervene.

Given the circumstances and limited purpose for which Caraco sought to intervene,

its motion was timely. See City of Detroit, 712 F.3d at 931-33 (reversing denial of

intervention on timeliness and prejudice grounds, finding that limited intervention

would not have disturbed the case). Because the district court did not consider

14

Caraco's reason for and scope of intervention, it improperly gave no weight to relevant facts and committed a clear error of judgment. In fact, until the day before Caraco sought to intervene, there was no issue on which Caraco sought to be heard that had not already been addressed by Sandoz. Therefore, the district court's denial of Caraco's Motion to Intervene on timeliness grounds was arbitrary and an abuse of discretion.

The district court erroneously relied on Ericsson, Inc. v. Interdigital Commc'ns Corp., 418 F.3d 1217 (Fed. Cir. 2005) (applying Fifth Circuit law), to find Caraco's Motion to Intervene untimely. (A11.) In Ericsson, the third party sought to intervene after the original parties had settled the case and the district court had signed the joint stipulation dismissing the case with prejudice. 418 F.3d at 1218-19. This Court reversed the grant of intervention because "there [must] be an existing suit in which to intervene." Id. at 1222. Here, the district court had not vacated the judgment or entered a dismissal of the case when Caraco moved to intervene. Unlike in Ericsson, where the intervenor sought to reopen a closed case, Caraco sought to intervene here in an open case, and only for the limited purpose of opposing a motion that the district court had not yet decided. Accordingly, the district court's reliance on Ericsson was erroneous.

15

B.    The District Court Failed to Consider that Caraco Acted Promptly
       When Sandoz Disclosed Its Intent to Vacate the Invalidity Decision.

The district court also erred by not considering the fact that Caraco promptly

moved to intervene once it learned that Sandoz no longer represented its interests.

Nat'l Wildlife Fed'n, 744 F.2d at 969-70.[3]  It further erred by not recognizing that

Caraco could not have filed a motion to intervene when this Court had jurisdiction

over the appeal.  Mountain Top Condominium Ass'n, 72 F.3d at 369 (timeliness is

determined from all the circumstances).

For almost four years, Sandoz successfully litigated the exact issue that

concerns Caraco - the invalidity of the '867 patent.  Both Caraco and Sandoz

asserted affirmative defenses that the '867 patent was invalid.  Caraco learned that

Sandoz abandoned its objective to invalidate the patent, however, on

December 6, 2013 - the same day Sandoz and Hospira sought leave from this Court

to jointly seek an indicative ruling requesting vacatur of the Invalidity Decision.

By joining the Joint Motion to Vacate, Sandoz for the first time changed sides, and

deviated from Caraco's interest in invalidating the patent.  This marked the first

point in time at which Caraco's interests were unrepresented.  See McDonald, 432

---

[3] See also In re Lipitor Antitrust Litig., No. 12-2389, 2013 WL 4495912, at *2
(D.N.J. Aug. 20, 2013) (aligning interests); Nat'l Collegiate Athletic Ass'n v.
Corbett, 296 F.R.D. 342, 350 (M.D. Pa. 2013) (matching interests).

16

U.S. at 394 (permitting permissive intervention where plaintiffs no longer represented the intervenor's interests).

Caraco could not have moved to intervene immediately, however, because given the pending appeal, the district court lacked jurisdiction to consider the Joint Motion to Vacate at that time. "The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." <u>Griggs v. Provident Consumer Disc. Co.</u>, 459 U.S. 56, 58 (1982). On December 16, 2013, the district court issued an indicative ruling that it would vacate the Invalidity Decision if the Federal Circuit remanded the case. (A1128-29.) Caraco similarly could not have moved to intervene to oppose Hospira and Sandoz' Motion for Indicative Ruling, because the district court lacked jurisdiction over the case at that time. <u>See Sec. & Exch. Comm'n v. Investors Sec. Corp.</u>, 560 F.2d 561, 568 (3d Cir. 1977) (district court lacked jurisdiction to grant motion to intervene filed after notice of appeal). On December 23, 2013, this Court remanded the case to the district court for consideration of vacatur, which restored the district court's jurisdiction. (A1280-81.) Caraco moved to intervene the very next day. (A1282-83.)

Caraco's Motion to Intervene was timely in light of all the circumstances. Caraco filed its Motion to Intervene immediately after the district court obtained jurisdiction on the issue of vacatur and at the earliest possible point after it learned that Sandoz no longer represented its interests. Compare <u>Ohio Willow Wood Co. v. Thermo-Ply, Inc.</u>, No. 07-274, D.I. 141 at 4-6 (E.D. Tex. Feb. 3, 2011) (unpublished) (granting permissive intervention on remand for consideration of vacatur where the proposed intervenor challenged validity in a separate patent proceeding) (A1382-85) <u>with</u> <u>Choike v. Slippery Rock Univ.</u>, 297 F.App'x 138, 141-42 (3d Cir. 2008) (denying intervention where athletes knew of the risk to their rights for eleven months and fact discovery had been completed five months prior to seeking leave to intervene). Unlike the circumstances in <u>Choike</u>, Caraco moved to intervene at the first opportunity after Sandoz changed positions on the validity of the '867 patent and no longer represented Caraco's interests.

C.    The District Court Failed to Consider
      that Caraco Would Not Have Been Permitted to Intervene Earlier.

    1.    Sandoz adequately represented Caraco's
          interests until shortly before Caraco moved to intervene.

The district court would not have permitted Caraco to intervene earlier in the litigation because Sandoz adequately represented Caraco's interests up until the time Sandoz reached a settlement with Hospira. See <u>supra</u> Section II.B. In

18

affirming a denial of permissive intervention on this ground, the Third Circuit

recently explained:

> [W]here, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be "undue."

Acra Turf Club, LLC v. Zanzuccki, No. 13-1634, 2014 WL 1273667, at *2 (3d Cir.

Mar. 31, 2014) (citing Hoots v. Com. of Pa., 672 F.2d 1133, 1136 (3d Cir. 1982)).

Thus not only was Caraco's motion timely, Sandoz's representation of Caraco's

interests would have warranted denial of an earlier motion.

> 2.  Earlier intervention would
>     have complicated and delayed the proceedings.

Courts also do not permit permissive intervention when it would complicate

and delay the proceedings, as intervention at an earlier stage of litigation would

have in this case.  See AstraZeneca AB v. Dr. Reddy's Labs., Ltd., No. 05-5553,

2010 WL 4387519, at *6-7 (D.N.J. Oct. 29, 2010).  In AstraZeneca, the patent

plaintiff asserted the same patent against two different companies in two different

actions.  Id. at *1-2.  The defendant in the later-filed action moved to intervene in

the earlier-filed action for the purpose of litigating patent invalidity.  Id.  At that

time, both fact discovery and claim construction had been completed in the earlier-

action and the court anticipated trying the matter in less than six months.  Id. at *3.

19

The proposed intervention would have required the reopening of fact discovery, thus delaying resolution of the case.  Id. at *4.  The court denied intervention, citing in part "the need to reopen fact discovery."  Id. at *7.

The district court erroneously concluded that Caraco should have moved to intervene before the filing of dispositive motions or trial, which directly conflicts with the outcome in AstraZeneca as well as the numerous cases that provide that timeliness is measured from the point at which the non-party's interests are no longer adequately represented.  See, e.g., Nat'l Wildlife Fed'n, 744 F.2d at 969-70. At the time of trial in the Sandoz case, discovery and claim construction had not been completed in the Caraco case.  As in AstraZeneca, Caraco's attempt to intervene earlier would have delayed the proceedings in the Sandoz case, and thus likely would have been denied.

Thus, for this additional reason, the district court's finding that Caraco should have intervened earlier was erroneous and an abuse of discretion.

> D.    If Upheld, the District Court's Decision
>        Would Lead to Inefficiency and Unpredictability.
>
>        1.    The district court's decision promotes inefficiency.

Requiring a non-party to intervene at an early stage of litigation, even when one of the parties is adequately representing its rights, is unsound policy that has been rejected by courts.  See McDonald, 432 U.S. at 394 n.15.  The Supreme Court

recognized that such a rule would force non-parties to intervene as a protective measure to preserve their right to participate later in the case should the party that is currently representing their interests suddenly stop doing so.  <u>Id.</u>  As another court explained, such a rule

> would promote a sort of prophylactic intervention whereby parties would be compelled to intervene in matters simply to protect their rights to participate in those matters downstream on the more or less remote chance that a party apparently protecting the intervenors' interests might someday betray them.  Such a result would obviously be expensive and inefficient.  Permitting [the proposed intervenor] to intervene keeps the number of parties in a dispute at a minimum unless and until a real divergence of interests arises.

<u>In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution</u>, 712 F. Supp. 1019, 1023-24 (D. Mass. 1989) (granting permissive intervention after a divergence of interests).

The district court's decision denying Caraco's Motion to Intervene would effectively require any person who could benefit from a patent invalidity decision to intervene even when an existing litigant effectively represented the would-be intervenor's interests.  This would lead to hopeless inefficiencies, as it would require patent litigants to partake in multiple litigations simultaneously.  Moreover, the district court's timeliness analysis conflicts with the weight of precedent, which recognizes the inefficiency of preemptive intervention.

2.     <u>The district court's decision will create unpredictability</u>.

The district court decision also creates unpredictability because it directs

non-parties to intervene at a time when it is highly unlikely that they would be

permitted to do so:  at the point of dispositive motions, trial or appeal.  The weight

of authority indicates, however, that none of these options would have been

feasible because Caraco's interests aligned with Sandoz's interests until December

6, 2013, well after each of these points in time.  Sandoz had successfully obtained

final judgment that the '867 patent was invalid and was actively defending the

Invalidity Decision on appeal, thus adequately representing Caraco's interests.

The conflict between authority denying early intervention, discussed in

Sections II.C., <u>supra</u>, and the district court's determination that Caraco should have

intervened earlier leaves no predictability as to when a patent defendant should

seek to intervene when patent invalidity is at issue.  Under the district court's

formulation, patent defendants would need to intervene preemptively or risk losing

the chance of being heard once the actual need for intervention ripened.  Yet, a

patent defendant's preemptive intervention may well be denied as premature based

on the weight of authority.  If district courts have unbounded discretion to decide

when a motion to intervene is timely, it would leave litigants to guess as to the

window of time that a specific district court might grant a motion to intervene.

The district court's decision, if upheld, would thus force a non-party to preemptively move to intervene at each stage of the litigation in an attempt to assure that it would not miss the narrow, unspecified window between being too early and too late. This would be inefficient and would serve no purpose. The problem would be particularly pronounced in Hatch-Waxman cases, as patent holders often concurrently sue multiple defendants in different actions.

## III. THE COURT ABUSED ITS DISCRETION IN FINDING THAT INTERVENTION WOULD PREJUDICE HOSPIRA AND SANDOZ.

The district court erred by finding that the possible denial of vacatur constituted cognizable prejudice to Hospira and Sandoz, and failed to consider that Caraco's intervention would not prejudice Hospira and Sandoz because it would not result in repeating, re-opening or delaying any litigation activities.

### A. Caraco Sought to Intervene Solely to Oppose Vacatur, Not to Interfere with Hospira's and Sandoz's Settlement.

The district court abused its discretion by concluding that Hospira and Sandoz "will be prejudiced if [Caraco] is permitted to intervene at this stage and to interfere with the settlement concerning the '867 Patent." (A12.) The district court improperly equated Caraco's proposed intervention in the case with the potential denial of vacatur. In Ohio Willow Wood, the court identified the flaw in this reasoning, explaining that delay and prejudice resulting from a denial of

vacatur is not interchangeable with delay and prejudice resulting from a grant of intervention. (A1384.) Indeed, Caraco's proposed intervention would only have resulted in a presentation of additional facts and law on the issue of vacatur.

Caraco did not seek to interfere with any settlement *per se*; rather, it sought only to present the district court with a complete statement of the applicable law and facts by opposing Hospira's and Sandoz's Joint Motion to Vacate. The fact that Hospira and Sandoz elected to condition their settlement on obtaining vacatur of the Invalidity Decision does not insulate Hospira and Sandoz from an adverse ruling on their Joint Motion to Vacate, nor should it lock out proposed intervenors that wish to oppose vacatur. Because intervention and vacatur are distinct, the district court abused its discretion by confounding them and using the potential for the denial of vacatur as a justification to deny intervention.

None of the cases cited in the district court's decision hold differently. (A12.) Those cases did not involve a motion to intervene to apprise the court of case law concerning a narrow legal issue prior to the settlement and dismissal of the case. Rather, the proposed intervention in those cases sought to directly interfere in an existing settlement or bring new claims in a closed case.

### B. Hospira and Sandoz Have No Absolute Right to Vacatur, and Therefore They Would Not Be Prejudiced by the District Court Denying Their Joint Motion to Vacate.

The district court appears to have further reasoned that Hospira and Sandoz would be prejudiced if they did not obtain the ruling sought in their Joint Motion to Vacate. (A12.) But the potential denial of vacatur could not cognizably prejudice Hospira and Sandoz, because it would simply reflect the correct legal outcome on the Joint Motion to Vacate. Only the district court, applying the law and making a legal determination, had the ability to deny vacatur. If the district court, upon considering Caraco's reasoned arguments, decided not to vacate the Invalidity Decision, there could be no prejudice. It simply would be the correct outcome.[4]

The district court's apparent conclusion that Hospira and Sandoz had such an unshakable right to vacatur that the district court could not allow itself to hear an opposing viewpoint is a clear error of judgment and an abuse of discretion. The district court's reasoning - that settlement is highly favored - is unavailing, because even a "favored" settlement would not justify a legally incorrect decision on the Joint Motion to Vacate. Furthermore, as discussed in Section V, infra, the district

---

[4] Notably, Caraco raised this point in its Response to Hospira, Inc. and Orion Corporation's Motion To Dismiss Caraco Pharmaceutical Laboratories, Ltd.'s Appeal, and Hospira did not attempt to rebut this argument in its Reply Brief in Support of Motion to Dismiss Caraco Pharmaceuticals Laboratories, Ltd.'s Appeal for Lack of Jurisdiction.

25

court ignored the fact that invalidity decisions belong to the public, and that they should not be reversed absent exceptional circumstances.

> C.   Caraco's Intervention Would
>      Not Have Unduly Delayed the Proceedings.

To the extent the district court found that Hospira and Sandoz would be prejudiced by any proceedings subsequent to the denial of vacatur, that finding was likewise an abuse of discretion.  (A6 n.1; A12.)  As discussed in Sections III.A-B., supra, any adverse effects flowing from the denial of vacatur cannot be cognizable prejudice if the denial of vacatur is the legally correct outcome.

The district court also failed to consider that Caraco's intervention would not unduly delay the resolution of the Joint Motion to Vacate.  Caraco promptly moved to intervene once Hospira and Sandoz moved to vacate.  (A68-69, D.I. 404-410.) At the time of Caraco's Motion to Intervene, the district court had not yet decided the Joint Motion to Vacate.  In fact, the Joint Motion to Vacate had a "return date" of nearly a month after Caraco filed its Motion to Intervene.  (A68.)  To the extent the district court's consideration of Caraco's Opposition to the Joint Motion to Vacate would have required additional time, this of course could not qualify as "undue" prejudice in the Third Circuit.  Appleton, 430 F. App'x at 138 ("'Undue' means not normal or appropriate.").  In fact, a denial of permissive intervention has

26

been reversed where the intervenor sought to "apprise the judge of case law affecting the order." See Liberte Capital, 126 F. App'x at 221.

## IV.   THE COURT ERRED IN FINDING THAT DENYING THE MOTION TO INTERVENE WOULD NOT PREJUDICE CARACO.

The district court also erred in finding that the denial of intervention would not prejudice Caraco.  Caraco has been sued in a different litigation on the same patent that the district court invalidated.  (A314; A318-20.)  Thus, Caraco had a real interest in the Invalidity Decision.  By denying Caraco's Motion to Intervene, the district court prevented Caraco from opposing the Joint Motion to Vacate and blocked Caraco's direct appeal of the vacatur decision.

Most importantly, the district court's erroneous decisions, if upheld, will require Caraco to spend millions of dollars invalidating a patent already held to be invalid.  The need for Caraco to engage in repetitive patent litigation is prejudicial.

## V.   THE DENIAL OF INTERVENTION WAS NOT HARMLESS ERROR.

The district court's denial of Caraco's Motion to Intervene was not harmless error because as a result, the district court ignored binding precedent regarding vacatur and Caraco was denied the right to directly appeal the vacatur decision.

The district court decided the uncontested Joint Motion to Vacate based on a skewed and incomplete picture of the law.  If Caraco had been permitted to intervene, it would have apprised the district court of binding Third Circuit

27

authority requiring that exceptional circumstances be present for a district court to vacate a prior judgment.  See Martinez-McBean v. Gov't of the Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977).  The district court did not apply this authority and, as a result, impermissibly sidestepped the question of whether exceptional circumstances justified vacatur.  (A13-14 (citing two orders).)

Furthermore, the district court's decision did not address the authority Caraco cited in its vacatur brief.  (A5-15.)  The district court merely stated in a footnote, without explanation, that it disregarded one case cited in Caraco's brief.  (A14 n.2 (declining to follow the reasoning of Devore v. City of Philadelphia, No. 00-3598, 2003 WL 21961975, at *1-3 (E.D. Pa. June 24, 2003).)  Not only did the district court fail to distinguish the finding in Devore that settlement was not an exceptional circumstance supporting vacatur, it ignored Third Circuit precedent, e.g., Martinez-McBean, 562 F.2d at 911.

The district court also failed to cite any exceptional circumstances.  Instead, it summarily concluded that settlements and generic competition are highly favored.  (A14.)  But the Supreme Court has rejected the notion that settlement, standing alone, qualifies as an exceptional circumstance that justifies vacatur.  See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 29 (1994).  "[Precedents] are not merely the property of private litigants and should stand

28

unless a court concludes that the public interest would be served by vacatur." Id. at 26 (internal quotation omitted). "In a patent case, especially where a patent has been invalidated, the public interest is overwhelming . . . because patents are public rather than private rights and involve extremely high stakes for the litigants." Ohio Willow Wood Co. v. Thermo-Ply, Inc., 629 F.3d 1374, 1376 (Fed. Cir. 2011) (Moore, J., concurring). The Supreme Court has noted "the wasteful consequences of relitigating the validity of a patent after it has once been held invalid in a fair trial, and . . . the danger that the opportunity to relitigate might, as a practical matter, grant monopoly privileges to the holders of invalid patents." Cardinal Chem. Co. v. Morton Int'l. Inc., 508 U.S. 83, 100-01 (1993). If the district court's decisions are upheld, the already invalidated '867 patent will remain enforceable and serve only to stifle generic competition. Hospira's assertion of the '867 patent in five actions filed after the district court's vacatur decision illustrates this fact.

If this Court does not reverse the denial of intervention, and the district court is not compelled to consider all applicable law relating to vacatur, then Hospira will have effectively privately purchased (through its settlement with Sandoz) an appellate victory overturning the invalidity decision. This will in turn allow Hospira to continue asserting the '867 patent. This is unjust not only to Caraco and the other eight defendants, who collectively must then spend tens of millions of

29

dollars defending themselves, but also to the public, as invalidity decisions belong to the public and should not be up for sale to dissatisfied plaintiffs.

When Hospira elected to assert the '867 patent, it knew that there was a chance that it would be held invalid. That is a risk that all patent plaintiffs must bear, and rightly so. By vacating the Invalidity Decision without allowing Caraco to provide relevant facts and law, the district court diminished the significance of the Invalidity Decision and endorsed Hospira's plan to erase the effect of that decision without an appellate reversal or a showing of extraordinary circumstances.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of Caraco's intervention and vacate the district court's grant of vacatur.

Respectfully submitted,

Date: June 2, 2014

/s/ Matthew J. Becker
Matthew J. Becker
Jason T. Murata
AXINN, VELTROP &
HARKRIDER LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: (860) 275-8100
Facsimile: (860) 275-8101
mbecker@axinn.com
jmurata@axinn.com

*Attorneys for Appellant Caraco*
*Pharmaceutical Laboratories, Ltd*

30

# ADDENDUM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| HOSPIRA, INC., et al., | : | CIVIL ACTION NO. 09-4591 (MLC) |
| | : | |
| Plaintiffs, | : | **ORDER & JUDGMENT** |
| | : | |
| v. | : | |
| | : | |
| SANDOZ INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

For the reasons stated in the Court's Memorandum Opinion dated February 27, 2014, **IT IS** on this 27th day of February, 2014, **ORDERED** that the motion filed on behalf of the plaintiffs and the defendants to vacate the parts of the Amended Memorandum Opinion dated May 4, 2012 (see dkt. entry no. 380) and the Amended Order and Judgment dated May 4, 2012 (see dkt. entry no. 381) that pertain to the infringement of United States Patent No. 6,716,867 (dkt. entry no. 404) is **GRANTED;** and it is further

**ORDERED** that the cross motion, inter alia, to intervene by the nonparty Caraco Pharmaceutical Laboratories, Ltd. (dkt. entry no. 410) is **DENIED;** and it is further

**ADJUDGED** that the parts of the Amended Memorandum Opinion dated May 4, 2012 (see dkt. entry no. 380) and the Amended Order and Judgment dated May 4, 2012 (see dkt. entry no. 381) that

**A001**

pertain to the infringement of United States Patent No. 6,716,867

are **VACATED AND WILL BE OF NO FORCE OR EFFECT**.


                    <u>  s/ Mary L. Cooper       </u>
                    **MARY L. COOPER**
                    United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOSPIRA, INC., et al.,                    :

    Plaintiffs,                        :      CIVIL ACTION NO. 09-4591 (MLC)

    v.                                 :

                                       **CORRECTED ORDER & JUDGMENT**

SANDOZ, INC., et al.,                     :

    Defendants.                        :

_____

For the reasons stated in the Court's Memorandum Opinion dated February 27, 2014, **IT IS** on the 27th date of February, 2014

**ORDERED** that the Motion filed on behalf of the plaintiffs and the defendants to vacate the parts of the Amended Memorandum Opinion dated May 4, 2012 (see dkt. entry no. 380) and the Amended Order and Judgment dated May 4, 2012 (see dkt. entry no. 381) that pertain to the invalidity of United States Patent No. 6,716,867 (dkt. entry 404) is **GRANTED**; and it is further

**ORDERED** that the cross motion, inter alia, to intervene by the nonparty Caraco Pharmaceutical Laboratories, Ltd. (dkt. entry no. 410) is **DENIED**; and it is further

**ADJUDGED** that the parts of the Amended Memorandum Opinion dated May 4, 2012 (see dkt. entry no. 380) and the Amended Order and Judgment dated May 4, 2012 (see dkt. entry no. 381) that pertain to

**A003**

the invalidity of United States Patent No. 6,716,867 are **VACATED AND WILL BE OF NO FORCE OR EFFECT**.

          s/ Mary L. Cooper
         MARY L. COOPER
         United States District Judge

**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HOSPIRA, INC., et al., | : | CIVIL ACTION NO. 09-4591 (MLC) |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| SANDOZ INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

     **THE PARTIES** to this action jointly move pursuant to Federal Rule of Civil Procedure ("Rule") 60(b) to vacate the parts of this Court's opinion, and order and judgment, that declared a certain pharmaceutical patent to be invalid ("Motion to Vacate"). (See dkt. entry no. 404, Joint Notice of Mot.)  A nonparty to this action, Caraco Pharmaceutical Laboratories, Ltd. ("CPL") cross-moves to permissibly intervene in this action pursuant to Rule 24(b), or alternatively for leave to file a brief as amicus curiae, in order to oppose the Motion to Vacate ("Cross Motion"). (See dkt. entry no. 410, CPL Notice of Cross Mot.)  For the following reasons, the Court will grant the Motion to Vacate and deny the Cross Motion.

     **PLAINTIFFS**, Hospira, Inc. and Orion Corporation, brought this action against Defendants, Sandoz Inc. and Sandoz Canada Inc., on September 4, 2009, alleging, inter alia, that Defendants infringed United States Patent No. 6,716,867 ("the '867 Patent"). (See dkt. entry no. 1, Compl.)  A review of this Court's docket

**A005**

reveals that the dispute was actively litigated for 32 months until May 4, 2012, when this Court issued an opinion ("May 2012 Opinion") and an order and judgment ("May 2012 Judgment"), <u>inter alia</u>, finding in Defendants' favor that the '867 Patent was invalid.  (<u>See</u> dkt. entry no. 381, 5-4-12 Am. J.; <u>see also</u> dkt. entry no. 380, 5-4-12 Am. Mem. Op.)  Plaintiffs and Defendants separately appealed to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") from the May 2012 Judgment. (<u>See</u> dkt. entry no. 385, Defs. Notice of Appeal; dkt. entry no. 386, Pls. Notice of Cross Appeal.)[1]

**WHILE** the entire dispute remained pending in the Federal Circuit, the parties (1) notified this Court on December 6, 2013, that the dispute insofar as it concerned the '867 Patent had been tentatively settled, and (2) sought an indicative ruling pursuant to Rule 62.1 that this Court would agree to vacate the parts of the May 2012 Opinion and the May 2012 Judgment concerning the '867 Patent as part of the settlement if the Federal Circuit

---

[1]  This action concerns an Abbreviated New Drug Application. This Court will not list every claim construction brief, dispositive motion, supporting brief, conference, oral argument, and court proceeding in order to demonstrate that this type of action entails vigorous prosecution and defense.  That this Court's docket for the action contains over 400 entries is illustrative.  This Court assumes that CPL, even though it is a nonparty, is well-aware of the expense and effort incurred by Plaintiffs and Defendants here, as well as the expense and effort that would be incurred on appeal in the Federal Circuit.

remanded the action.  (See dkt. entry no. 400, Notice of Mot.)
On December 16, 2013, this Court advised the parties that it
would indeed so vacate upon the Federal Circuit's remand.  (See
dkt. entry no. 402, 12-16-13 Order.)

**BY AN ORDER** dated December 23, 2013 ("12-23-13 Federal
Circuit Order"), the Federal Circuit remanded "for the limited
purpose of the district court's consideration of the parties'
motion for vacatur", but stated that it "retain[ed] jurisdiction
so that any of the parties may seek appellate review" and that
"[t]he appeals are held in abeyance pending the resolution of the
motion for vacatur by the district court".  (See dkt. entry no.
410-7, 12-23-13 Fed. Cir. Order at 2.)

**THE PARTIES** jointly filed the Motion to Vacate on the same
day that the 12-23-13 Federal Circuit Order was issued, arguing
that:

> the parties have independently reached a mutually agreed
> settlement in the appeal of the above-captioned case.
> The parties have independently determined that the
> public and private benefits of settlement are
> significant, and outweigh their respective opportunities
> to proceed with their important appellate rights. . . .
> Hospira has vigorously contested [this Court's] ruling
> [on the '867 Patent] before the Federal Circuit, but
> faced the risk that the Court's judgment will be
> affirmed and that [Defendants] could enter the market
> unimpaired.  [Defendants], on the other hand, faced the
> risk that the Court's ruling will be reversed, possibly
> leading to an injunction through 2019, and exposure to

3

damages if [they launch] while the appeal is pending. Informed in large part by their experience at the trial and their views of this Court's decision, the parties have now agreed that they and the public would be benefited by increased certainty, and accordingly, they have agreed that [Defendants] may launch [their] product on December 26, 2014, or even earlier in certain circumstances. That permits generic competition almost five years before [Defendants] could launch if the '867 patent were found valid.

The settlement balances the rights of both parties, preserving [Plaintiffs'] important rights inherent in patent ownership, while removing the possibility that [Defendants] would be enjoined from launching [their] product until the '867 patent expires. Both sides have independently assessed the risks of proceeding with their appeals and have reached what they believe to be an equitable settlement.

(Dkt. entry no. 404-1, Jt. Redacted Mem. of Law in Support of Mot. to Vacate at 5-6.)

**CPL** filed a letter on the same day, notifying this Court of its intention to seek intervention, as: (1) "Hospira sued [CPL] in the United States District Court for the Eastern District of Michigan (see Hospira, Inc. v. Caraco Pharms. Labs., Ltd., Case No. 10-14514 (E.D. Mich.)) [("Michigan Action")], in November 2010 alleging infringement of the '867 patent"; (2) "Hospira is barred by collateral estoppel from pursuing a claim of infringement of the '867 patent in light of this Court's '867 Patent Invalidity Judgment"; (3) "at the invitation of the

4

**A008**

Michigan district court, [CPL] submitted a motion for summary judgment based on collateral estoppel in view of [this Court's] '867 Patent Invalidity Judgment"; and (4) CPL "has a substantial interest in any decision this Court may reach regarding vacatur", as "[a]ny decision by this Court regarding vacatur will necessarily impact the Michigan [Action]". (Dkt. entry no. 407, 12-23-13 CPL Letter at 1-2.)

**CPL** followed by filing the cross motion on December 24, 2013. (See CPL Notice of Cross Mot.)  In support, CPL stated that briefing for the aforementioned motion for summary judgment pending in the Michigan Action would be "close[d] on December 31, 2013". (Dkt. entry no. 410-1, CPL Br. in Support of Cross Mot. at 3.)  CPL also filed separate opposition to the Motion to Vacate. (See dkt. entry no. 410-2, CPL Br. in Opp.)  CPL asserts in the opposition brief that "[a]t present, the '867 patent stands invalid because of the Court's judgment."  (Id. at 13.)

Plaintiffs have filed opposition to the Cross Motion. (See dkt. entry no. 411, Pls. Mem. in Opp.)  They point out therein that CPL was well-aware of the pending appeal and agreed to stay the Michigan Action pending the outcome before the Federal Circuit. (See id. at 3.)  The docket for the Michigan Action supports that contention.  See Michigan Action, dkt. entry no. 56, 5-7-12 So-Ordered Stipulation (staying Michigan Action pending outcome of Federal Circuit appeal); dkt. entry no. 60, 5-

**A009**

24-13 Order Extending Stay.  The stay in the Michigan Action apparently was eventually extinguished, even though the dispute addressed by this Court remained pending in the Federal Circuit.

**WHETHER** to permit CPL to intervene under Rule 24(b) is a matter of discretion for this Court.  See Fed.R.Civ.P. 24(b)(3) (stating intervention determination is discretionary exercise).  This Court initially finds that there is jurisdiction here, as (1) this is a patent dispute, and (2) the action has been remanded by the Federal Circuit.  This Court also finds that the validity of the '867 Patent is at issue here and in the Michigan Action, and thus there is arguably a common question of law or fact.  See Fed.R.Civ.P. 24(b)(1)(B).

**BUT** the Cross Motion insofar as it concerns intervention is not timely, as CPL should have sought to intervene earlier.  See Fed.R.Civ.P. 24(b)(1) (stating court may permit intervention "[o]n timely motion").  CPL was neither thwarted nor lulled into complacency by Plaintiffs or Defendants.  Cf. United States v. Alcan Aluminum, 25 F.3d 1174, 1181 (3d Cir. 1994) (stating movant timely sought intervention, even though action had been ongoing for several years, as party induced movant to refrain from moving to intervene).

**IT WOULD** be inequitable to require parties engaged in pharmaceutical-patent litigation to move to intervene in every separate action in every district court wherein the same patent

6

**A010**

is at issue.  But it is not unreasonable for a nonparty to seek
to intervene in a separate action if that separate action has
reached the point of dispositive motions, trial, or appeal,
because at that point the nonparty knows or should know of its
interest in a case.  See Price v. Daigre, No. 08-16, 2011 WL
6046313, at *2 (S.D. Miss. Dec. 5, 2011) (denying intervention
motion in view of totality of circumstances); see also Univ. of
Notre Dame v. Sebelius, No. 13-3853, 2014 WL 687134, at *11 (7th
Cir. Feb. 21, 2014) (stating nonparty's intervention may be
permitted for first time on appeal).  CPL failed to move to
intervene at any of the aforementioned points in this litigation
before the parties advised this Court that the dispute at issue
had been settled, and thus this Court finds the request to
intervene to be untimely.  See Ericsson, Inc. v. Interdigital
Commc'ns Corp., 418 F.3d 1217, 1222 n.5 (Fed.Cir. 2005)
(chastising movant for waiting until dispute had settled to move
to intervene, as movant was aware of progress of case for two
years before seeking to intervene).

**CPL** will not be prejudiced if its request to intervene is
denied, as it will not be prevented from arguing that the '867
Patent is invalid in the Michigan Action.  CPL is aware of the
reasoning set forth in the May 2012 Opinion and can borrow that
reasoning in support of any future motion for summary judgment in
the Michigan Action.  See Price, 2011 WL 6046313, at *3 (finding

7

**A011**

movant seeking intervention not prejudiced "because it still has
an adequate remedy" within the confines of its own action).
Plaintiffs and Defendants, in stark contrast, will be prejudiced
if CPL is permitted to intervene at this stage and to interfere
with the settlement concerning the '867 Patent.  See Fed.R.Civ.P.
24(b)(3) (stating "court must consider whether the intervention
will unduly delay or prejudice the adjudication of the original
parties' rights") (emphasis added).

**IT IS** unfortunate that Plaintiffs and Defendants could not
settle the dispute at issue before this Court issued the May 2012
Opinion.  But this Court sees no reason to squelch a settlement
agreement reached by the parties to this action while the dispute
at issue is pending at the appellate level.  See Price, 2011 WL
6046313, at *3 (finding parties would be prejudiced by
intervention, especially as case had progressed to settlement);
Dixon v. Margolis, No. 89-5019, 1992 WL 80512, at *5 n.5 (N.D.
Ill. Apr 14, 1992) (stating intervention motion filed after
original parties have settled is unlikely to be granted).

**CPL'S ARGUMENT** that the '867 Patent is invalid due to the
May 2012 Judgment, and thus that the May 2012 Opinion carries
precedential weight, is without merit in view of the appellate
proceedings that remain pending before the Federal Circuit.  A
district court opinion issued in a pharmaceutical-patent dispute
that is on appeal to the Federal Circuit — as opposed to an

8

**A012**

opinion issued by the Federal Circuit itself — is mere persuasive authority.  See Camreta v. Greene, 131 S.Ct. 2020, 2033 n.7 (2011) (stating district court decision is not binding precedent in different district, in same district, or on same judge in different case); Old Republic Ins. Co. v. Chuhak & Tecson, P.C., 84 F.3d 998, 1003 (7th Cir. 1996) (stating "decisions by district judges do not have the force of precedent"); McMullen v. European Adoption Consultants, 129 F.Supp.2d 805, 811 n.2 (W.D. Pa. 2001) (noting as to dispute therein "that the Court of Appeals has not decided the question and that district court opinions are merely persuasive authority").

    **CPL'S ALTERNATIVE REQUEST** for leave to file a brief as amicus curiae is a matter to be decided in this Court's discretion.  See Waste Mgmt. of Pa. v. City of York, 162 F.R.D. 34, 37 (M.D. Pa. 1995); Yip v. Pagano, 606 F.Supp. 1566, 1568 (D.N.J. 1985), aff'd, 782 F.2d 1033 (3d Cir. 1986) (table decision).  Leave to so file may be granted if a court desires assistance in the understanding of an issue, and if the information offered is timely and useful.  See Waste Mgmt. of Pa., 162 F.R.D. at 36. This Court requires no further assistance in this dispute and declines to grant CPL leave to file a brief as amicus curiae. See Avellino v. Herron, 991 F.Supp. 730, 732 (E.D. Pa. 1998).

    **THE MOTION TO VACATE** has been made jointly by the parties to this action.  They have settled part of their dispute amicably

before incurring further expense at the appellate level.
Settlements are — of course — highly favored.  That generic
competition will occur sooner than later should also be highly
favored as a matter of public policy.  This Court sees no reason
to obstruct the settlement achieved here.  See Goldman v. Gen.
Accident Ins. Co. of Am., No. 01-2686, 2007 WL 2781935, at *1
(D.N.J. May 24, 2007) (granting motion to vacate opinion and
order where (1) parties agreed to settle dispute after notice of
appeal filed, (2) settlement was contingent on district court's
vacatur, and (3) Court of Appeals granted uncontested motion for
limited remand for limited purpose of allowing parties to move to
vacate in district court); Kim v. United States, 903 F.Supp.
1546, 1546 (S.D.N.Y. 1995) (granting motion to vacate opinion and
judgment where (1) parties agreed to settle dispute after notice
of appeal filed, and (2) settlement was contingent on district
court's vacatur).  This Court will exercise its discretion to
vacate its own rulings and grant the Motion To Vacate.  See
Fed.R.Civ.P. 60(b)(6), (c)(1).[2]

---

[2]  CPL relies on Devore v. City of Philadelphia, No. 00-3598,
2003 WL 21961975, at *1-3 (E.D. Pa. June 24, 2003), wherein (1)
judgment was entered upon a jury verdict, (2) the parties reached
an agreement to settle after judgment had been entered, and (3)
the court denied a motion to vacate the judgment.  This Court
declines to follow Devore to the extent that its reasoning may be
viewed as being contrary to this Court's decision.

**THE COURT** will grant the Motion to Vacate, and deny the Cross Motion.  For good cause appearing, the Court will issue an appropriate order and judgment.[3]

___s/ Mary L. Cooper_____
**MARY L. COOPER**
United States District Judge

Dated:  February 27, 2014

---

[3]  The 12-23-13 Federal Circuit Order states that "[t]he parties should promptly inform [that] court of the district court's ruling on the motion pursuant to Fed.R.App.P. 12.1(b) and should propose how they believe the appeals should proceed in light of the district court's ruling".  (12-23-13 Fed. Cir. Order at 2.)  The parties should now so inform the Federal Circuit.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2014 I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Federal

Circuit by using the appellate CM/ECF system.  I further certify that all counsel are

registered CM/ECF users and that service will be accomplished via the CM/ECF

system.


Date:  June 2, 2014                                    /s/ Matthew J. Becker
                                                                Matthew J. Becker
                                                                AXINN, VELTROP &
                                                                HARKRIDER LLP
                                                                90 State House Square
                                                                Hartford, CT 06103-3702
                                                                Telephone:  (860) 275-8100
                                                                Facsimile:  (860) 275-8101
                                                                mbecker@axinn.com

                                                                *Attorney for Appellant Caraco*
                                                                *Pharmaceutical Laboratories, Ltd*

## <u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned hereby certifies that this brief complies with the typeface requirements of Fed. R. App. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and the "type-volume" limitation of Fed. R. App. P. 32(a)(7)(B).  The brief uses a proportional 14-point typeface, Times New Roman, and contains 6,586 words.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of the Microsoft Word word-processing software.


Date:  June 2, 2014

/s/ Matthew J. Becker
Matthew J. Becker
AXINN, VELTROP &
HARKRIDER LLP
90 State House Square
Hartford, CT 06103-3702
Telephone:  (860) 275-8100
Facsimile:  (860) 275-8101
mbecker@axinn.com

*Attorney for Appellant Caraco*
*Pharmaceutical Laboratories, Ltd*